THE BRADLEY LIVERY COMPANY, PLAINTIFF IN ERROR, v. JAMES L. SNOOK, DEFENDANT IN ERROR.

Argued June 24, 1901—Decided November 15, 1901.

1. An innkeeper is responsible only where the owner or driver of a pair of horses delivers them into his custody to be kept or cared for by him for the night or the like.
2. If he makes no request for care, or does not notify the innkeeper of the requirement for care, or does not deliver his horses to the innkeeper's hostler engaged for that purpose, there is no liability on the innkeeper for the loss in case the horses escape or are stolen.
3. The mere tying of a pair of horses under a shed, without calling the innkeeper's attention to the fact, or putting the horses in the custody of his hostler, will not raise an implied contract to be responsible for the safety of the horses, and, in case of their loss, a resulting liability for damages for their value.
4. The risk of their escaping or being stolen from such a place is as obvious to the guest as it is to the innkeeper.

On error to the Bergen Circuit.

At the trial of this cause the plaintiff was nonsuited upon his offer to prove the following facts:

The plaintiff is a corporation under the laws of the State of New Jersey, duly incorporated, and on November 25th, 1900, which was a Sunday, was the owner of a coach and pair of horses. The defendant was keeping an inn in the borough of Wallington, under license duly granted to him September 11th, 1900.

Defendant's inn consisted of a main building and a covered

shed, attached to one side thereof and connected therewith by a door leading from the shed directly into the lower floor of said main building.

The lower floor of said main building was used for bar-room, parlors, &c., the upper floor for chambers.

The main building faced Paterson plank road, and was a little distance back therefrom. On the easterly side of it ran a street at right angles to the plank road, and on the westerly side was the shed above mentioned, also facing and open on the side towards the plank road, but enclosed on all other sides and roofed in.

This shed was habitually used by defendant's guests to hitch their horses in, and was on his premises as well as attached to, and connected by doorway with, his main inn building. The defendant maintained a driveway from the plank road to this shed, and had it (the shed) provided with hitching straps or ropes.

The plaintiff's servants had frequently left their horses hitched in this shed to the knowledge of the defendant, and he never notified them that there was any other place in which to leave horses, or that horses left in this shed would be so left at their risk.

On the Sunday in question, plaintiff's servant drove a party of gentlemen, with the coach and pair, to defendant's inn. This was in the evening and it was very rainy. On arriving at the inn, by direction of his passengers, plaintiff's servant, James Taylor, drove into this horse-shed, and they alighted and went into the inn through the connecting doorway, saying to Taylor that they intended to stay some time. Taylor then hitched the horses to the tie-straps in the shed, and, as one of his lamps had gone out, then went into the inn and fixed the lamp, and took it back to the coach. Upon entering the inn, he was accosted by Snook, who remarked that it was a nasty night for driving.

Snook knew Taylor, and knew that he was an employe of the plaintiff. After fixing the lamp Taylor re-entered the inn, and was at once accosted again by Snook, who said that his passengers had ordered something to drink and asked him

what he would have. Taylor then took whiskey with the others, and they also had something to eat together. A few minutes later Taylor again went out to the shed and discovered that the coach and pair had vanished. He at once started out to find what had become of them. The same evening he found the coach badly wrecked by the side of the roadway, about a mile away. One of the horses and part of the harness he found soon after he found the coach. The other horse and the rest of the harness and the pole of the coach he found the next day.

The harness showed that the lines, the pole straps and some other parts had been cut with some sharp instruments.

For the damages sustained by the plaintiff in the premises it seeks to recover in this suit.

For the plaintiff, *Copeland, Luce & Kipp.*

For the defendant, *Koester & Read.*

The opinion of the court was delivered by

FORT, J. We find no error in the direction of a nonsuit by the learned trial judge in this case.

The liability of an innkeeper for the property of his guest placed in his care arises out of an express or an implied contract of bailment. Such contractual relation can only arise where it is apparent, under the facts, that such was the intention of the parties. A contract, of course, may be implied from the circumstances, as well as established by an actual agreement. In order to raise an implied contract of liability on the part of an innkeeper for the goods of his guest lost or stolen, it must, at least, appear that the guest placed the same in his care and keeping. The mere tying of a pair of horses under a shed, without specifically calling the innkeeper's attention to the fact, or putting the horses in the custody of his hostler, will not raise an implied contract to be responsible for the safety of the horses, and, in case of their loss, a resulting liability for damages for their value. An open shed is obviously not a place of safety, and a guest placing his horses

there has no right to rely upon the innkeeper's care of them, unless the innkeeper is expressly requested to exercise such care. The risk of their being stolen or otherwise taken is as obvious to the guest as it is to the innkeeper.

The correct rule in this regard is that declared by the Supreme Court of New Hampshire, in a case where a guest came to an inn with a team and wagon, the wagon being loaded; the horses attached to the wagon were put up for the night and the wagon was run under the shed. During the night articles were stolen from the wagon under the shed. The court, in that case, says: "Inns in this country are not. generally furnished with accommodations for the protection of the carriages of all guests of the inn. The custom of leaving them in yards, where they cannot be protected but by guards. is so usual and well known that we think it a sound position that the assent of the traveler is to be presumed in such case, unless he makes a special request that his carriage should be put in a safe place, and that he is not liable unless he is requested to put them in a place of safety." *Albin* v. *Presby,* 8 *N. H.* 408.

The plaintiff in error in this case relies largely upon the case of *Mason* v. *Thompson, 9 Pick.* 280, to sustain his contention that, under the facts at the head of this opinion, he is entitled to recover, but a careful reading of that decision shows that it holds the position reached by the trial judge and sustained here. The opinion in that case rests, in holding the innkeeper, wholly upon the theory that the property had been "committed to his care." The rule there stated by Mr. Justice Wild is this: "Innkeepers, as well as common carriers, are regarded as insurers of the property *committed to their care,* and are bound to make restitution for any injury or loss not caused by the act of God, or the common enemy, or the neglect or fault of the owner of the property."

Where property is committed to the care of the innkeeper, the liability arises. An innkeeper is responsible only where the owner or driver of horses delivers them into his custody to be kept or cared for by him for the night or the like. If he

makes no request for care, or does not notify the innkeeper of the requirement for care, or does not deliver his horses to the innkeeper's hostler, employed for that purpose, there is no liability on the innkeeper for the loss in case the horses escape or are stolen.

The common law rule with regard to the liability of an innkeeper for property committed to his keeping to be cared for outside the inn, is stated in *Clute* v. *Wiggins,* 14 *Johns.* 175. In that case the innkeeper in the town of Half Moon received the plaintiff with his sleigh, which was loaded with wheat. The plaintiff being a guest for the night, the horses were put into the stable and the sleigh, with the wheat, was put into the wagon-house, where it had been usual to put loads of that description. The next morning it was discovered that the door of the wagon-house had been broken open and the wheat stolen from the plaintiff's sleigh. In that case the court says: "He [the defendant] received the plaintiff as his guest for the night, with his loaded sleigh and horses. The sleigh, with its contents, was put into an outhouse appurtenant to the inn, where it had been usual for the defendant to receive loads of that description. The doors of this wagon-house were broken open, from which it may be inferred that the building was close and the doors fastened in such a manner as to promise security. The bags of grain, therefore, may be deemed to have been *infra hospitium;* and being so, it is not necessary to prove negligence in the innkeeper to make him liable for the loss." *Cayle's Case,* 8 *Co.* 63; *Bennet* v. *Mellor,* 5 *T. R.* 273.

A horse delivered to an innkeeper, with a request that he be put to pasture, will not make the innkeeper liable, if he comply with the request and the horse is stolen. *Hawley* v. *Smith,* 25 *Wend.* 642.

In the case under review, the facts fail to disclose that the horses and wagon, for which liability is here claimed, were placed in the custody of the innkeeper. It would seem as if the converse of that proposition was established by the facts. The plaintiff let its team to the gentlemen who were the guests of the defendant at his inn. They did not request the inn-

keeper to care for the horses and carriage which had brought them to the inn. They had, in fact, left the horses in the care of the plaintiff's servant, in whose custody the plaintiff itself had placed them. The servant had put the horses under the shed, provided for common use by the innkeeper, and had made them fast by the ropes provided in the shed for tying horses left to stand therein by any person. Such a shed is obviously not a place of safety, and a person leaving his horses therein, without request of any kind of the innkeeper or his hostler for their care, cannot hold the innkeeper for loss of the property, on an implied contract of bailment, arising out of such a state of facts. The law raises no such implication.

Whether a plaintiff who is not himself a guest of an innkeeper, but whose servant may be, can maintain such an action as this against an innkeeper, is not decided, as no such question was raised on the argument or in the briefs as filed; that question is left open for determination when presented. There is no error, and the nonsuit is sustained.

*For affirmance*—THE CHIEF JUSTICE, VAN SYCKEL, GARRISON, GUMMERE, COLLINS, FORT, GARRETSON, HENDRICKSON, BOGERT, ADAMS, VREDENBURGH, VOORHEES, VROOM. 13.

*For reversal*—THE CHANCELLOR. 1